362 P.2d 584

Veigh CUMMINGS and JoEllen Cummings, his wife, Plaintiffs and Appellants,

v.

J. Elmo ENGLAND, DeLoyd England and Boyd England, a partnership, doing business under the name and style of England Brothers, Defendants and Respondents.

No. 9344.

Supreme Court of Utah.

June 12, 1961.

Gray's Attorney's Textbook of Medicine, Third Edition.

**70**

King & Hughes, Salt Lake City, for appellants.

Robert B. Hansen, Salt Lake City, for respondents.

WADE, Chief Justice.

This action was commenced by the plaintiffs and appellants herein, Veigh Cummings and his wife, JoEllen, wherein they sought an accounting of funds which they claimed were due them from a sale of a ranch in Summit County, Utah, in which they were purchasing a one-half interest in a real estate contract from J. Elmo England, DeLoyd England and Boyd England, a partnership, doing business under the name of England Brothers, respondents

herein. The court found appellants owed respondents $2,925.38 and granted judgment in that amount. This appeal is from that judgment.

The record discloses that on May 7, 1958, a written agreement was executed by appellants and respondents wherein respondents agreed to sell to appellants for $30,000 an undivided one-half interest in the ranch they were purchasing under a real estate contract with third parties. In the contract between appellants and respondents it was provided that appellants make the semi-annual payments of $1,500, which were payable on the 1st of April and October to the parties from whom England Brothers were purchasing the land until appellants had paid their full purchase price of $30,000. The agreement also provided that each of the parties were to have equal use of the ranch property and were to share equally in the expenses and income of any crops harvested from said lands. The agreement further provided that the fixed value of the ranch property was $60,000, and that any time during the life of the agreement after 12 months from the date of its execution either party had the option to purchase the other party's interest, payment to be made in cash within 120 days after the exercise of such option to purchase or as otherwise mutually agreed upon.

The record also discloses that after appellants took possession of the ranch they made large expenditures for labor and other operating costs to which respondents did not contribute their one-half as provided in their agreement. Appellants did not make the October, 1958, payment when it became due, and respondents, having become dissatisfied with the joint operation, wrote appellants on October 28, 1958, that the option to pay them off what they had invested in the ranch was being exercised unless conditions changed and the parties could come to some satisfactory solution. On November 19, 1958, respondents wrote another letter to appellants in which it was stated that they were exercising their option under one of the terms of the agreement to forfeit appellants' rights in the ranch and were terminating the agreement because of the failure of appellants to make a payment within the 30-day grace period of the October 1, 1958, payment. Within a short time after receipt of this letter appellants tendered payment of $1,500.

Subsequently, in February, 1959, respondents gave a third party an option to purchase the ranch for $75,000. Appellants continued operating the ranch and in April, 1959, again tendered a payment. This tender was refused by respondents on May 14, 1959, on the ground that appellants had forfeited their rights by failure to timely make the October, 1958, payment. Respondents, in their letter of refusal of the April, 1959, tender of payment by appel-

lants, stated that "[I]n the event, and only in the event that Veigh Cummings and his wife, JoEllen, have any interest in the subject property in spite of Mr. Marshall's letter of November 19, 1958, referred to above, the England Brothers do hereby exercise their option to pay off your clients pursuant to the first full paragraph on page 3 of that agreement." (The first full paragraph on page 3 of the agreement is the one giving either party the option to buy out the other party's interest 12 months after the execution of the agreement.)

Both appellants and respondents, desiring that the sale to the third party for $75,000 be consummated, entered into an agreement on June 26, 1959, wherein it was agreed that the ranch would be sold for that sum, and that from the proceeds of the sale the balance of approximately $35,000 due on the original real estate contract between England Brothers and the owners would be paid, then $30,000 would be paid the England Brothers, and $6,000 would be paid appellants, and the approximately $4,000 remaining should be placed in escrow pending agreement or resolution by appropriate judicial proceedings to determine the distribution of the proceeds of the sale. The sale to the third party was made in July, 1959, and the parties, not being able to agree as to their respective rights in the proceeds of the sale, this suit was commenced by appellants in August, 1959.

After the trial the court found that respondents owed appellants $1,754.11 as half of the operating expenses for the ranch. The court further found that appellants' rights had not been forfeited for failure to timely make the October 1, 1958, payment because respondents had attempted in their letter of October 28, 1958, to prematurely exercise the option to buy out appellants' interest. We agree. By respondents' letter of October 28, 1958, appellants were informed that respondents were dissatisfied with the joint operation of the ranch and desired to exercise their option to buy out appellants' interest. Under such circumstances it was reasonable for appellants to conclude that no further payments from them under the contract would be expected or accepted by respondents, and appellants were therefore excused from making a tender of the payment within the 30-day grace period. It follows respondents therefore did not have the right to terminate the contract for failure to make this payment, since the law does not require the doing of a vain and useless thing.[1]

The court also found that respondents had properly exercised their option to purchase on May 14, 1959, by irrevocably relinquishing to appellants any claim they might otherwise have to $1,597.59 of the $6,000 received by appellants in

---

1. 52 Am.Jur. Tender, pages 216–17, Sec. 4.

 

the agreement of June 26, 1959. This was error. Williams v. Espey [2] made it clear that an option is a continuing offer which must be unconditionally accepted. Under the terms of the agreement the one exercising the option agreed to pay cash for the interest of the other within 120 days or as otherwise mutually agreed. There was no evidence of a mutual agreement to accept other than cash in 120 days. The evidence is clear that this was not done. Instead respondents attempted to make payment by allowing appellants to retain a certain amount from a sum which appellants claimed belonged to them and not to respondent. Such an offer clearly could not constitute a cash payment as provided in the option. At the time the payment was to have been made it was uncertain as to whether or not the entire $6,000 belonged to appellants, since the trial was not held until the next year. The court having erred in finding that respondents had effectively exercised the option to purchase, both appellants and respondents were the owners of an undivided one-half interest in the property subject to the payments which had to be made to the owners in the original contract of purchase. When respondents made the sale of the ranch to the third party, they made it for themselves and appellants. Under the terms of the contract appellants were purchasing a one-half interest in the ranch. The sale being made for their benefit as well as for respondents, they were entitled to one-half the profits.

Reversed. Costs to appellants.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

2. 11 Utah 2d 317, 358 P.2d 903.